**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MXY HOLDINGS LLC and FLORIDA LEASING AND CONSULTING, LLC,**

**Plaintiffs,**

**v.** Case No. 1:20-cv-025043-RNS

**CANSORTIUM INC., FREEDOM TOWN HOLDINGS, LLC and ROBERT BEASLEY,**

**Defendants.**
_______________________________________/

**MOTION TO DISMISS COMPLAINT AS TO ROBERT BEASLEY**

**COMES NOW** the Defendant, **ROBERT O. BEASLEY**, by and through his undersigned counsel, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), and files his motion to dismiss and provides his memorandum of law in support thereof, as follows:

**THE LEGAL STANDARD FOR DISMISSAL**

A complaint must contain a short plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. Rule 8(a)(2). While detailed factual allegations are not generally required, the complaint must provide sufficient factual detail to give the defendant fair notice of the grounds upon which it is based. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). It must go beyond mere labels and conclusions; the formulaic recitation of the elements of a cause of action is not sufficient to withstand a motion to dismiss. *Bell* at 545. Legal conclusions must be supported by sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The tenet that a court must accept the pleaded matter as true is inapplicable to threadbare recitals of elements and conclusory

statements. *Iqbal* at 1941. Finally, allegations of fraudulent conduct cannot be pleaded generally; they must be pleaded with particularity pursuant to Fed. R. Civ. P. Rule 9(b).

**BACKGROUND**

Plaintiffs MXY Holdings, LLC ("Moxie") and Florida Leasing and Consulting, LLC ("Florida Leasing") filed their Complaint against Cansortium, Inc ("Cansortium"), Freedom Town Holdings, LLC ("Freedom Town") and Robert Beasley, individually ("Beasley"). The Complaint contains ten (10) purported causes of action all arising from Cansortium's purported breach of a Term Sheet and Subscription Agreement (whereby Moxie invested funds in Cansortium) and a Management Services Agreement or "MSA" (whereby non-party MXY Equipment Holdings, LLC agreed to serve as an advisor to Cansortium). Rather than bring a straightforward breach of contract action, Plaintiffs attempt to allege causes of action for fraud, conspiracy, tortious interference, unjust enrichment, conversion, misappropriation of trade secrets and declaratory judgment as well. Further, they include Beasley, an individual who is not a party to any agreement with the Plaintiffs, as a defendant in their purported claims for fraudulent inducement (Count II), conspiracy to commit fraudulent inducement (Count III), aiding and abetting fraud (Count IV) and tortious interference with contract (Count IX). None of these claims states a viable cause of action against Beasley, nor are they cognizable in federal court.[1]

---

[1] In its general allegations, at Para. 16, Plaintiffs Complaint states that it contains a claim against Beasley for unjust enrichment. However, no such claim follows. Defendant assumes that Para. 16 is simply erroneous. In any event, an unjust enrichment claim cannot stand when a Plaintiff also alleges the existence of an express contract in the same count. See, e.g. *Ocean Communications, Inc. v. Bubeck*, 956 So.2d 1222, (Fla. 4th DCA 2007) (holding that one cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, when an express contract exists); cf *Poe v. Levy's Estate*, 411 So.2d 253 (Fla. 4th DCA 1982) (holding that allegations of an express contract preclude, in the same count, a claim for quantum meruit). Pleadings alleging the

**ISSUES FOR WHICH DISMISSAL IS SOUGHT**

1. *Claims Arising out of Agreements for the Cultivation and Sale of Medical Marijuana are not Cognizable in the Federal Court System*. Medical marijuana remains illegal under federal law, specifically the Controlled Substances Act of 1970. Multiple federal courts have ruled that they cannot give relief in an action arising from contractual relationships related to the cultivation and sale of this federally prohibited product, even if specifically permitted by state law.

2. *Plaintiffs fail to state a claim for fraudulent inducement, with particularity or otherwise.* Fraud must be plead with particularity in order to withstand a motion to dismiss. Plaintiffs not only fail to plead with particularity; they fail to allege a single representation of any kind made by Beasley.

3. *Plaintiffs fail to state a claim for conspiracy to commit fraudulent inducement, with particularity or otherwise.* Plaintiffs must plead that a conspiracy defendant engaged in an overt act in furtherance of the conspiracy, and fraud claims must be plead with particularity. Plaintiffs' conspiracy count suffers from the same fatal flaw as their fraud claims, a complete failure to allege any overt act whatsoever.

4. *Plaintiffs' claim for conspiracy to commit fraudulent inducement fails because a business entity cannot conspire with its own agent or employee.* Plaintiffs allege that Beasley was an attorney acting as an advisor to Cansortium's board member and largest stakeholder, that he was acting as special counsel to the Board of Directors of Cansortium (and later as Cansortium's CEO), and that he was acting as a representative of Freedom Town. By law, a business entity is not capable of conspiring with its own

---

existence of express contracts are incorporated into all counts of Plaintiffs' Complaint.

agents or employees. In light of Plaintiffs' own allegations, a conspiracy claim cannot stand against Beasley.

5. *Plaintiffs fail to state a claim for aiding and abetting fraud, with particularity or otherwise.* If aiding and abetting fraud even exists as a cause of action in Florida, it requires the plaintiff to allege that the aider/abettor rendered substantial assistance to the fraudulent act. He must have proximately caused the harm by affirmative act; mere inaction is not enough in the absence of a fiduciary obligation to the plaintiff. Plaintiffs completely fail to allege any actual overt action on Beasley's part that constitutes substantial assistance.

6. *Plaintiffs tortious interference claim fails because Beasley is not a dis-interested third party*. For contractual interference to be unjustified, the defendant must be a third party, external to the business relationship. According to Plaintiffs' own allegations, Beasley was not a dis-interested third party because he was acting within the scope of his employment relationship, which bars an interference claim against him.

## MEMORANDUM OF LAW

### I. Claims Arising Out of Agreements for the Cultivation and Sale of Medical Marijuana Are Not Cognizable in the Federal Court System

Notwithstanding the widespread legalization of marijuana for medical use at the state level, the possession, cultivation and sale of marijuana remains prohibited under federal law. The Controlled Substances Act ("CSA") designates marijuana is a Class I controlled substance. §21 U.S.C. §812. The CSA makes it unlawful to "manufacture, distribute, or possess" a controlled substance. 21 U.S.C. §§841(a)(1), 844(a). The CSA continues to criminalize the manufacture, distribution or possession of marijuana for any

purpose notwithstanding any state law to the contrary. *Gonzalez v. Raich*, 545 U.S. 1 (2005).

The district courts have consistently ruled that a federal court cannot grant relief on claims arising from contracts that are intertwined with the cultivation and sale of marijuana. For example, in *J. Lilly, LLC v. Clearspan Fabric Structures Int. Inc.*, 2020 WL 1855190 (D. Ore 2020), a marijuana growing business licensed by the State of Oregon entered into a contract with a builder to construct a grow facility. The construction work was not satisfactory to the grower, who claimed that it was unable to commence operations in a timely manner. The grower sued the contractor in federal court, seeking to recover lost profits on theories of breach of contract, breach of warranty and negligence. The district court dismissed the claims after ruling that it could not grant an award for lost profits arising from the marijuana business because it violates the CSA.[2]

In *Sensoria, LLC v. Top Holdings, Inc.*, 2021 WL 103020 (D. Colo. 2021), a business investor purchased stock in a business venture that was intended to operate in Colorado's state-legal marijuana business. When the investment turned out to be a total loss, the investor brought suit in federal court seeking to recover the financial benefit of its investment. The district court determined that the purpose of the subject business was to grow and sell marijuana, that the business was prohibited by the CSA, and that granting the requested relief would endorse or compel illegal activity. Accordingly, the district court found the claims to be subject to dismissal on the basis of illegality.

---

[2] The court cited other reasons for dismissing the claim as well, but found that the illegality was "an independent basis" upon which the claim was subject to dismissal.

Similarly, in *Polk v. Gontmaker*, 2020 WL 2572536 (W.D. Wash 2020), the plaintiff alleged that he had an ownership interest in a marijuana growing and processing business operating in the State of Washington, which the other owners of the business disputed. The plaintiff filed suit in federal district court seeking to recover his purported equity interest in the business, along with past and future profits. The district court determined that it could not grant the requested relief because the monies sought included profits to be made from an illegal business, and dismissed the claims.

Several district court decisions have emerged involving issues somewhat ancillary to the marijuana business. These have been described as "gray areas."[3] For example, in *Green Earth Wellness Center, LLC v. Atain Specialty Ins. Co.*, 163 F.Supp.3d 821 (D. Colo. 2016), the Court declined to dismiss a claim filed by a marijuana business against its insurer for failure to pay its insurance claim, on the basis that any judgment was to "recompense to [the business] based on [the insurer's] failure to honor its contractual promises, not an instruction to [the insurer] to pay for damages to marijuana plants and products." *Green Earth* at 834 (internal quotations omitted). This should be contrasted with *Tracy v. USAA Casualty Ins. Co.*, 2012 WL 928186 (D. Haw. 2012), in which the district court held the opposite, stating "this Court cannot enforce the [insurance contract] because Plaintiff's possession and cultivation of marijuana, even for State-authorized medical use, clearly violates federal law. To require Defendant to pay insurance proceeds for the replacement of medical marijuana plants would be contrary to federal law and public policy, as reflected in the CSA, *Gonzalez*, and its progeny").

Another "grey area" case is *Ginsburg v. ICC Holdings, LLC*, 2017 WL 5467688 (N.D. Tx. 2017). In *Ginsburg*, an investor loaned funds to a marijuana business and

[3] In Re: Sandra C. Malul, 614 B.R. 699 (D. Colo. Bankr. 2020).

secured the loans with two promissory notes. He sued in federal court for recovery of unpaid funds, along with a myriad of other actions. The marijuana business moved to dismiss on the basis that the purpose of the notes was to fund a federally illegal marijuana business, suggesting that the notes could not be enforced in federal court. The court did not terminate the litigation on the 12(b)(6) motion, stating that "Although the court does not suggest that a contract with the purpose of funding an organization that is violating or intends to violate federal law is necessarily enforceable, or that, in this case, the Notes are themselves enforceable, it concludes that at the Rule 12(b)(6) stage that defendants have not established from the face of the [complaint] that the Notes are void and unenforceable."

The existence of gray areas around the marijuana business' interaction with the federal courts was addressed and very clearly explained in *In Re: Sandra C. Malul*, 614 B.R. 699 (D. Colo. 2020). Malul entered into a subscription agreement with a marijuana business called Heartland pursuant to which she invested funds. The investment was lost and Mahul filed suit in state court. Mahul subsequently attempted to schedule her interest in Heartland and her state court action as assets in bankruptcy. In considering the illegality of the assets, the bankruptcy court analyzed both *Green Earth* and *Ginsburg.* The court determined that *Green Earth* and *Ginsburg* stand for the proposition that "contracts that can be performed without violating the CSA are likely enforceable even if the transaction's subject matter involves CSA violations." *Mahul* at 709. The court described these cases as being critically different in nature because they "turned on the ability of the defendant, if it was found liable, to satisfy any damage reward with funds from any source, not necessarily a marijuana-related source, due to the fungibility of

currency." *Mahul* at 710. By contrast, the court found that Mahul's subscription agreement was *per se* illegal pursuant to CSA §854, which prohibits investment in a marijuana enterprise. In the court's words:

> Under CSA § 854, it was illegal for Fritzel to incorporate Heartland, to solicit investments in Heartland, and to sell securities in Heartland. Concomitantly, it was illegal for Malul to execute the Subscription Agreement and to own an interest in Heartland, and it would have been illegal for Malul to accept distributions from Heartland on account of those interests. The illegality does not depend on any violation of CSA § 841 with respect to cultivating or distributing marijuana, nor the temporal aspect of such violations, but rather, the illegality arose immediately upon the creation of Malul's equity interest by virtue of CSA § 854. Accordingly, the incidental fact Heartland never operated as intended is wholly irrelevant. There simply is no conceivable circumstance where Malul would have claims except by virtue of owning a *per se* illegal asset. The specific legal theory underlying the claims is irrelevant because, one way or another, Malul's damages will be calculated as the difference between the present value of her interest in Heartland's assets and earnings and the value those interests would represent but for Fritzel's alleged misdeeds.

In other words, the court determined that every claim the debtor may have had arising from its investment in the marijuana business was an illegal claim under federal law due to CSA §854 and could not be administered in any way by a federal court.

Just like the subscription agreement in *Mahul*, Moxie's Term Sheet and Subscription Agreement, whereby it purports to have invested in Cansortium and have management rights in Cansortium is an illegal asset according to CSA §854. This fact permeates every aspect of its claims, regardless of the particular styling of its causes of action. Further, the MSA whereby Florida Leasing claims to have provided services in the form of assisting in the cultivation of marijuana is *per se* illegal under CSA 841. The illegality is apparent from the face of the Complaint. There is no circumstance under which the Plaintiffs can allege a claim that does not arise directly from one or more of

these agreements, or from which the Court could award relief that does not condone federally-illegal activity. Accordingly, Plaintiffs' claims are not cognizable in this Court.

## II. Plaintiffs Fail to State a Claim for Fraudulent Inducement, With Particularity or Otherwise

In order to allege a viable cause of action for fraudulent inducement a plaintiff must allege that: (1) the defendant made a false statement regarding a material fact; (2) the defendant knew that the statement was false when he made it or made the statement knowing he was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment. *Simon v Celebration Company*, 883 So.2d 826, 832 (Fla. 5th DCA 2004).

In the case of fraud in the inducement, the pleading standard is much higher. According to Fed.R.Civ.P. 9(b), allegations of fraud are "special matters" which must be plead with particularity. In other words, there is a heightened standard for pleading in which general allegations will not suffice. The rule applies to fraud in the inducement claims. *NCR Credit Corp. v. Reptron Electronics, Inc.*, 155 F.R.D. 690 (M.D. Fla. 1994). The plaintiff pleading fraudulent inducement must state the "identify of the person who made the misrepresentation, the time, place and content of the misrepresentation and the method by which the misrepresentation was communicated to the plaintiff." *Id*. at 693 (citing to *Vicom, Inc. v. Harbridge Merchant Services*, 20 F.3d 771 (7th Cir.1994)).

Plaintiffs' Complaint does not just fail to plead the nature of the misrepresentation with particularity. It fails to allege that Beasley made a single false statement at all. The sum total of the allegations of Beasley's involvement in the pre-contract negotiations are that he was present at a lunch meeting between Moxie's CEO and Cansortium's largest

stakeholder (who is also a board member) Bill Smith, in his capacity as an attorney and advisor to Mr. Smith.[4] There is no allegation that Beasley made a single statement at this meeting. It is also alleged that Beasley was present for a post-contract dinner meeting between the same two individuals. While this alleged meeting is irrelevant to a fraud in the inducement claim because it came after entry into the contract, it should still be noted that Plaintiffs again fail to allege that Beasley made a single statement.[5]

Obviously, in the absence of an allegation that Beasley made any representation at all, it naturally follows that Plaintiffs failed to allege that Beasley knew his statement was false or made it recklessly, failed to allege that Beasley intended for Plaintiffs to rely on his statement, and failed to allege that the Plaintiffs justifiably relied on his statement.

Additionally, Plaintiff Florida Leasing fails to state a claim against Beasley for inducing it to enter into the MSA for another reason. According to the allegations, the only pre-contract action taken by Beasley was to be "present" at a lunch meeting between the Moxie CEO and Cansortium's largest stakeholder.[6] There is no allegation that Florida Leasing was even present at this meeting. In fact, Florida Leasing was not even a party to the MSA. The MSA was between Cansortium and non-party MXY Equipment Holdings, LLC.[7] Florida Leasing obtained its interest in the MSA by assignment months later.[8]

In light of the foregoing, Plaintiffs fail to state a claim for fraudulent inducement

---

[4] Doc. 1 at pp. 7 (para. 34). Beasley contests the date for the lunch meeting alleged by Plaintiffs. In the event this case proceeds beyond the motion to dismiss stage, the evidence will establish that the lunch meeting occurred <u>after</u> the Term Sheet, Subscription Agreement and MSA were executed, precluding any inducement-based claim against Beasley.

[5] Doc. 1 at pp. 9 (para. 46) and pp. 28 (para. 145).

[6] Doc. 1 at pp 7 (para. 34).

[7] Doc. 1 at pp 8 (para. 41).

[8] In fact, if this case proceeds beyond the motion to dismiss state, the evidence will show that Florida Leasing was not even formed until after the date that Plaintiffs allege the lunch meeting occurred.

and Robert Beasley should be dismissed from Count II.

## III. Plaintiffs Fail to State a Claim for Conspiracy to Commit Fraudulent Inducement, with Particularity or Otherwise

A claim for conspiracy must be supported by an underlying tort. *See, American Seafood, Inc. v. Clawson*, 598 So.2d 273 (Fla. 3rd DCA 1992). As discussed above, Plaintiffs have utterly failed to allege that Beasley made any actionable misrepresentation. Without a fraudulent inducement claim, there can be no conspiracy claim.

Further, an actionable civil conspiracy requires allegations of (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. *Eagletech Communications, Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So.3d 855, 863 (Fla. 4th DCA 2012). General allegations of conspiracy are inadequate. Id. at 863; *Bond v. Koscot Interplanetary, Inc.*, 246 So.2d 631 (Fla. 4th DCA 1971).

Plaintiffs' claim makes conclusory allegations of the existence of a conspiracy.[9] However, these threadbare conclusions are not supported by factual allegations. The Complaint does not allege a single overt act taken by Beasley. Again, the most that Plaintiffs actually say about Beasley's pre-contract actions was that he was "present" at a lunch meeting during the course of the negotiations.[10] By Plaintiffs' own allegations, Beasley was "present" as an attorney and advisor to one of Cansortium's board members (and largest stakeholder). There is no allegation that he said a word at this meeting.

[9] See, for example, Doc. 1 at pp. 29 (para. 150)(". . . Defendants concocted a scheme . . . "); pp. 36 (para. 203)("Cansortium, acting in a common scheme with Freedom Town and Beasley . . ."); pp. 38 ("Defendants formed an agreement whereby Cansortium, with the aid of Beasley, would induce. . .").
[10] See, Doc. 1 at pp. 39 (para. 217).

Without an overt act, there can be no claim for conspiracy. Accordingly, Plaintiffs fail to state a cause of action for conspiracy to commit fraudulent inducement and Robert Beasley should be dismissed from Count III.

**IV. <u>Plaintiffs' Claim for Conspiracy to Commit Fraudulent Inducement Fails Because a Business Entity Cannot Conspire with its own Agent or Employee</u>**

Since a corporation is a legal entity which can only act through its agents and employees, a corporation cannot conspire with its own agents or employees unless the co-conspiring corporate agents are alleged to possess a personal stake in achieving the object of the conspiracy which is separate and distinct from the corporation's interest. *McLeod v. Barber,* 764 So.2d 790, 793 (Fla. 5th DCA 2000) (dismissing a conspiracy claim with prejudice where it was alleged that an insurer and its agent conspired to commit fraud, in the absence of allegations that the agent acted individually or that he possessed an independent personal stake in achieving the object of the conspiracy). *See also American Credit Card Telephone Co. v. National Pay Telephone Corp*., 504 So.2d 486 (Fla. 1st DCA 1987)(no cause of action for conspiracy against corporate employees unless it was shown that they had a personal stake in the illegal activities separate and distinct from that of the corporation).

Everything Beasley is alleged to have done leading up to the subject contracts (having lunch, no more and no less) was alleged to have been done in his capacity as advisor to Cansortium or its largest stakeholder, or as representative of Freedom Town. There is not even a suggestion that Beasley was acting on his own or had a personal stake in the negotiations apart from the defendant businesses. With no allegation that Beasley had a separate and distinct stake in the negotiations, a claim that he conspired with the defendant entities cannot stand. Given the foregoing, Plaintiffs have failed to state a

cause of action for civil conspiracy against Robert Beasley and he should be dismissed as a defendant from Count III.

**V. <u>Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud, with Particularity or Otherwise</u>.**

It has not been definitively established that aiding and abetting fraud is a valid cause of action in Florida. See, *ZP No. 54 Limited Partnership v. Fidelity and Deposit Company of Maryland*, 917 So.2d 368 (Fla. 5th DCA 2005)("A review of the caselaw suggests that, despite a dearth of authority, aiding and abetting fraud may well be a valid cause of action in Florida.") *See also Chang v. JP Morgan Chase Bank*, 845 F.3d 1087 (11th Cir. 2017)("Although no Florida court has explicitly recognized a cause of action for aiding and abetting fraud, Florida courts have assumed that the cause of action exists."). Subsequent to *ZP No. 54* and *Chang*, the Fourth District seems to have assumed the action exists in *Gilison v. Flagler Bank*, 303 So.3d 999 (Fla. 4th DCA 2020).

All of the referenced courts rely directly or indirectly on out-of-state courts to establish that, if the action exists in Florida, its elements must be as follows: (1) There existed an underlying fraud; (2) The defendant had knowledge of the fraud; and (3) The defendant provided substantial assistance to advance the commission of the fraud. *ZP No. 54* at 372, *Chang* at 1097-98, *Gilison* at 1002. Substantial assistance occurs when the defendant "affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur." *Chang* at 1098, *Gilison* at 1003-04. The plaintiff must allege that the defendant aider/abettor "proximately caused the harm on which the primary liability is predicated" in order to establish substantial assistance. *Gilison* at 1004. "Mere inaction constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Chang* 1098.

As shown above, the cause of action in this instance (if it even exists) fails for the simple fact that the Plaintiff has not alleged an underlying fraud on the part of Robert Beasley. As stated in the sections above, fraud must be plead with particularity. Attending lunch, standing alone, is not a fraudulent act. Further, the Plaintiffs have failed to allege any overt act on Beasley's part that constitutes substantial assistance. To be sure, they allege that Beasley "conspired," and "schemed," and had "ulterior motives," all of which are conclusions. But they do not allege a single act on Beasley's part that constitutes assistance to fraud. They certainly do not, and cannot, allege that Beasley owed them a fiduciary duty. Based on the foregoing, Plaintiffs fail to allege a cause of action for aiding and abetting fraud and Robert Beasley should be dismissed.

## VI. Plaintiffs' Tortious Interference Claim Fails Because Beasley is Not a Dis-Interested Third Party

The elements of a cause of action for tortious interference with a contract or business relationship are (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights, (2) the defendant's knowledge of the relationship, (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the interference. *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381 (Fla. 4th DCA 1999). For interference to be "unjustified," the interfering defendant must be a third party "stranger" to the business relationship. *Id* at 386.

Neither a party to a contract nor its agent can be held liable for interfering in its own contract. *M&M Realty Partners at Hagan Ranch, LLC v. Mazzoni*, 982 F.3d 1333 (11th Cir. 2020). A person with "any beneficial or economic interest in, or control over" a contractual relationship is not a "stranger" to the relationship and is privileged to

interfere. *Id*. at 1339. The "core rule [is] that a tortious interference claim does not lie against an agent acting within the scope of his agency, which stems from the bedrock understanding that a contracting party is never liable for interfering with his own contract." *Id* at 1340.

The Fourth District applied the agency rule in Salit. Shareholders of a corporation brought an action against the corporation's law firm, alleging tortious interference with contract. The court held that the law firm, as an agent of the corporation, could not be held liable for "interfering" with a contract to which the corporation was a party. Having alleged that the law firm was counsel to the contracting party, the pleader was obligated to show how its participation in the offending acts was unjustified. Specifically, the court stated that the complaint failed to allege that "the firm participated . . . without an honest belief that its actions would benefit [the client] and that [the actions] were not in [the client's] best interest." *Salit* at 386.

Plaintiffs affirmatively allege that Beasley was an attorney acting as an advisor to Cansortium's board member and largest stakeholder, that he was acting as special counsel to the Board of Directors of Cansortium, and that he was later acting as Cansortium's CEO. There are no allegations that he acted outside the scope of his alleged agency, nor that he participated without an honest belief that his actions would benefit Cansortium. For that matter, there are no allegations that he took any overt action whatsoever to interfere with the contracts. Given the foregoing, Plaintiffs have failed to state a cause of action for tortious interference against Robert Beasley and he should be dismissed from Count IX.

## CONCLUSION

The claims brought by Plaintiffs are not cognizable in federal court because they are arise directly from activities that are expressly prohibited by federal law. In addition, the Plaintiffs failed to allege a single pre-contract action taken by Beasley except to attend a lunch meeting. It is not alleged that he spoke a single word at this meeting. The complaint simply fails to allege any actual fraudulent conduct on Beasley's part. Finally, the Plaintiffs seek to have Beasley held liable for interfering with contracts with Cansortium, while simultaneously alleging that Beasley was Cansortium's agent, which is prohibited by Florida law. The Complaint contains no valid or properly plead cause of action against Beasley and he should be dismissed as a party.

**WHEREFORE,** Defendant Robert Beasley moves the Court for entry of an Order of Dismissal of Robert Beasley as a Party Defendant to Plaintiff's Complaint and for such further relief as the Court deems appropriate.

/s/ Phillip A. Pugh
PHILLIP A. PUGH, FL Bar No. 505501
Litvak Beasley Wilson & Ball, LLP
40 Palafox Street, Suite 300
Pensacola, FL 32502
Service emails: phillip@lawpensacola.com
ROBservice@lawpensacola.com
(850) 432-9818 Telephone
*Attorney for Robert Beasley*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been delivered to the Court via Federal Express delivery and provided to the following via electronic mail delivery on this 12th day of March 2021:

**Jesmany Jomarron, Esquire**
**William P. McCaughan, Jr., Esquire**
Farrell Patel Jomarron Lopez
4300 Biscayne Boulevard, Suite 305
Miami, FL 33137
eservice@justice360.com
william@justince360.com
Attorneys for Plaintiff

**Oliver D. Griffin, Esquire**
**Melissa A. Bozeman, Esquire**
1760 Market Street
Suite 1100
Philadelphia, PA 19103-4104
oliver.griffin@kutakrock.com
Melissa.bozeman@kutakrock.com
Attorneys for Plaintiff

/s/ Phillip A. Pugh
PHILLIP A. PUGH